to pay all her debts, but in the due course of administration, and before the assent of the administrator, to the freedom of the petitioner, and without any default on his part, the estate other than the negroes, had by subsequent events become wholly inadequate to the payment of debts, the petitioner's right to freedom would no longer have existed; and if by events subsequent to the death of the testatrix, in the due course of administration, her estate at her death, greatly insufficient, should become sufficient, the right of the petitioner to her freedom could not be resisted.     To be a sound rule it must work both ways.

Had the jury in their verdict disregarded either the law or the facts of the case, the city court was the tribunal from which redress should have been sought.     There such an application was preferred but was overruled.     Approving of their decision we feel no inclination, even if we had the power, to arrest the execution of what we believe to have been a most righteous verdict.

Concurring with the court below, in their refusal and instructions in all the appellant's bills of exceptions, we affirm their judgment.

**JUDGMENT AFFIRMED.**

---

HENRY S. SANDERSON *vs.* RICHARD E. ALCOCK.—*Dec'r*, 1837.

An appeal will not lie by the sheriff, from an order of the county court, directing him to bring into court money which he has received upon an execution.

APPEAL from *Baltimore* county court.

The appellee in this cause obtained judgment against one *Benjamin Brady*, and on the 11th May, 1836, sued out a *fi. fa.* thereon, returnable to September term, 1836.     The sheriff not returning the writ, was laid under a rule to return it, on

or before the 10th September. On the 17th October, the sheriff (the appellant) having still failed to return the writ, the plaintiff (now appellee) moved for a judgment against him, under the act of 1794, ch. 54, sec. 1.

The appellant resisted the judgment upon the following grounds :

1. Because, whether the plaintiff be entitled to the proceeds of the execution against *Brady*, is a question now depending in this court.

2. Because a motion is still pending to quash the execution in this cause.

3. Because the defendant offered, if the plaintiff would indemnify the said *Sanderson*, to pay him over the proceeds of sale.

4. Because the said *Sanderson* is sued for taking said goods, and a bill in equity is also filed against him.

The appellant then filed his petition in *Baltimore* county court, admitting the issue and levy of the execution—that the proceeds of the goods were subject to the order of the court that suits at law, and in equity had been brought against him by various parties for the same proceeds, and he prayed to be allowed his expenses and counsel fees.

At May term, 1837, the sheriff informed the court that other suits had been brought against him by *Erskine* and *Chapman* for the whole proceeds, and then moved the court for a rule on the plaintiff, to show cause why the motion for a judgment against the sheriff should not be extended until the next term, suggesting the reasons before relied on and the further one, that the property was under mortgage at the time of the levy; and produced the mortgage.

The appellee then moved the court for a judgment against the sheriff under the act of 1797, ch. 43, and filed the answer of *Sanderson* to one of the equity causes depending against him, showing the amount he had received under the *fi. fa.* against *Brady*, and it was now admitted that the mortgage on *Brady's* goods was satisfied. The proceedings in the

several causes against *Sanderson* were agreed to be received as evidence upon the plaintiff's motion for a judgment.

At October term, 1837, *Baltimore* county court (*Archer, Ch. J. Magruder and Purviance, J's*) decided, that the motion for a judgment in this case against the sheriff be overruled, and also the motion to enlarge the time for the sheriff to make return of the *fi. fa.* in this case. But it appearing to the court from the evidence in the cause, that the sheriff has made on the *fi. fa.* the sum of $8,158.95, being the net proceeds admitted by the sheriff to be due, after deducting the amount of the judgment obtained by the mortgagees of *Brady's* goods and costs, which amount is by consent of the plaintiff's counsel deducted. It is ordered by the court this 4th October, 1837, that the late sheriff forthwith on the service of this order on him, bring into court the amount thus made, and when brought in, the court will on application stay the money in court, until a bond of indemnity shall be tendered to the sheriff, to be approved of by the court, or one of the judges thereof.

From which order the said *Henry S. Sanderson*, late sheriff, appealed.

At this term the appellee moved to dismiss the appeal.

The motion was argued before BUCHANAN, Ch. J. STEPHEN, DORSEY, CHAMBERS, and SPENCE, Judges.

JAMES M. NICHOLSON, for the appellee, moved,

For dismissal of the appeal, on the ground that the subject of the decision below, was not of that nature from which an appeal lies.

The appellant, as sheriff of *Baltimore* county, had served and levied an execution of *fi. fa.* issued by the appellee on a judgment in his favour, but had made no return. The appellee moved for a judgment against the appellant (the sheriff) for having failed to make a return, and the appellant moved for an enlargement of the time to make his return. The court refused both motions, but ordered the appellant to

bring the proceeds of the executions into court to abide their further disposition. The appellant declined obeying this order, and took an appeal; and the question now presented is, whether an appeal lies from such a decision. In *Jessop vs. Brown*, 2 *Gill and John.* 404, a motion was made (apparently in the court of Appeals) by a sheriff for the enlargement of a rule on him to make a return to a writ of *fi. fa.* and the court there say, that there is no general rule in such cases, but that each must depend upon its own circumstances. Does not this necessarily imply, that the decision in such cases is wholly in the discretion of the court before whom the motion is made; that being the only tribunal before whom all the circumstances can fully and fairly be brought. If so, no appeal can be taken from the decision of the court below. In *Wall vs. Wall*, 2 *Har. and Gill*, 79, the court say that where the subject decided by the inferior court is left by law to their discretion, as in the refusal to grant a new trial, it has been adjudged, that a writ of error will not lie. But apart from the authority of *Jessop vs. Brown*, it stands to reason, that a motion by the sheriff for the enlargement of his time in which to make a return to a writ, is a motion to the favour and discretion of the court. The law is imperative, that he shall make a return within a specified time; and our acts of assembly direct, that judgment shall be entered up against him if he fails to do so. There is no express law authorizing him to obtain from the court an enlargement of that time. The interference of the court in his behalf is matter of practice, and not of positive law, and the practice originated from the fact that as the sheriff was the officer of the court, bound to obey its decrees, is, if at any time, peculiar hardship would be experienced by his carrying out those decrees, it was allowed as a favour for him to ask the interposition of this court, and either compel an indemnity bond to be given, or exempt him from further action. This power, the discretion of the court is appealed to. Their own officer seeks for their protection from the rigour of the law, and if in their opinion they ought to inter-

fere they are competent to do so. But if they think their interference is not necessary, there is no law enabling the sheriff to compel their interference by appeal or in any other way. In the present instance the sheriff, as was proved beyond doubt, (his own admissions,) had sold property under execution and was in possession of the proceeds. He was ruled to make a return of the writ, which he failed to do, but moved the court for an enlargement of his time, assigning for reason that the property sold was claimed by third parties who had sued him. The court thought that under all the circumstances that he was entitled to an indemnity bond, but not the possession of the money which he had been keeping for a twelve month and upwards without interest. They accordingly order him to bring the money into court to be invested, unless the plaintiff chose to indemnify the sheriff. The sheriff would not abide the decision, but by filing an appeal bond, retains possession of the money. The question is will the appeal lie? If the interference of the court below was a matter which he could demand as a right, then he can appeal from their decision. If their interference is a mere favour to be exercised by the court in their discretion according to the peculiar circumstances of each case, then their determination is final, and the sheriff must submit without delay.

R. JOHNSON, for the appellant.

The only question now is whether an appeal will lie from the order. It is a command to the sheriff to bring in the money, and may seriously injure him. The money is to be brought into court. But to what situation is the sheriff reduced? Here are four claimants for the same fund. None can tell who has the right. How is he to defend himself? May he not rightfully keep the funds to secure himself?

An appeal has been sustained by a defendant, ordered to bring money in by the court of Chancery? *Thompson vs. McKim, et al,* 6 *Har. and John.* 302. This order settles nothing. The appeal is taken, and money retained by the

sheriff because of its consequence to him. There is no distinction between orders at law and in equity. And the appeal is allowed, not because the order is final, but because it professes to be final, and may do great practical injustice, if erroneous.

APPEAL DISMISSED.

---

Negro Peggy *vs.* Michael Wilson.—*December*, 1837.

By the act of 1823, ch. 87, the importer of slaves into this state, from any of the United States, is not required in the list which he is to deliver to the clerk of the county, to state the manner in which he acquired his title.

If all the other requisitions of the pre-existing laws are complied with, the list is complete, though the mode of acquiring the title is omitted.

APPEAL from *Allegany* county court.

This was a petition for freedom, filed by *Negro Peggy* on the 29th day of September, 1835. The petition alleged generally that the appellant was a free woman according to the laws of the state—that she ought to be free, and was now held in service by the appellee—prayer for a judgment according to the law and evidence. The appellee denied her right to freedom, on which issue was joined.

At the trial of the cause the petitioner proved by *P. H. Bray*, that sometime in the month of May, 1824, he assisted in bringing the petitioner from *Hampstead* county, *Virginia*, to the residence of the defendant in *Maryland*, in *Allegany* county—that he often saw the petitioner afterwards at the residence of the defendant previous to the institution of this suit, the defendant claiming her as his property.

The defendant, to support the issue on his part, proved by *William Ashley*, that he was employed by the defendant in May, 1824, to go to *Virginia*, and bring the petitioner from thence to *Maryland*. That the defendant purchased the petitioner from *Warner Throckmorton*, of *Hampstead* county afore-